**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 22-22780-Civ-GAYLES/TORRES

MARIE ROSENA GILLES-JEAN

    *Plaintiff.*

v.

ROYAL CARIBBEAN CRUISES, LTD.,
A Foreign Profit Corporation;

    *Defendant.*

_____/

**REPORT AND RECOMMENDATION ON**
**ROYAL CARIBBEAN'S MOTION FOR JUDGMENT ON THE PLEADINGS**

  This matter is before the Court on Royal Caribbean's ("RCCL") motion for judgment on the pleadings ("the Motion"). [D.E. 98]. The Motion is fully briefed and therefore ripe for disposition.  [D.E. 104, 113]. Having considered the briefing and the relevant authorities, and otherwise being fully advised in the premises, the Court finds that RCCL's motion should be **DENIED**.[1]

_____

[1] On April 17, 2023, the Honorable Darrin P. Gayles referred this matter to the Undersigned Magistrate Judge for rulings on all pre-trial, non-dispositive matters and for issuance of a Report and Recommendation on any dispositive matters. [D.E. 51].

## I.    BACKGROUND

This action stems from injuries that Plaintiff allegedly sustained in The Bahamas while participating in a shore excursion during a RCCL cruise ship voyage. Dolphin Encounters (Dolphin) is a Bahamian entity that offers shore excursions to cruise ship passengers in Blue Lagoon Island, a private island that Dolphin owns and operates in The Bahamas. [D.E. 74 ¶¶ 12–16, 20]. In connection with this business, Dolphin owns and operates the Blue Lagoon Ferry Boats that are used to transport participating RCCL passengers, such as Plaintiff, to and from the cruise ship and Blue Lagoon Island. [*Id.* ¶ 24]. Dolphin's fleet of ferries includes the *Islander II*, the vessel that allegedly Plaintiff departed from when she suffered the injuries for which she seeks relief today.

Ms. Gilles-Jean ("Gilles-Jean" or "Plaintiff"), a citizen of New York, claims that she suffered negligence-induced injuries while participating in Dolphin's excursion on October 30, 2021, while her cruise ship—*Freedom of the Seas*—was docked in Nassau, The Bahamas. [*Id.* ¶¶ 35–42]. Because the island where the excursion takes place is located approximately thirty minutes away from where *Freedom of the Seas* docks in Nassau, cruise ship passengers are transported to the island by ferry. [*Id.* ¶¶ 43–44].

Plaintiff claims that she was injured while attempting to disembark the *Islander II* onto the dock that was attached to the *Freedom of the Seas*. [*Id.* ¶ 38]. According to the SAC, Dolphin crew members failed to properly dock the *Islander II*, and they negligently debarked excursion participants off the *Islander II*. [*Id.* ¶ 39].

Specifically, Plaintiff claims that the ferry suddenly dropped in elevation as she was disembarking and stepping onto the floating platform to return to the cruise ship, caused her left leg to become trapped in between the floating dock and the ferry's hull, resulting in injuries to her ankle and tibia. [*Id.* ¶ 40].

Based on these facts, Plaintiff filed a seven-count second amended complaint (the "SAC" or "Complaint") against RCCL: failure to provide a reasonably safe means of embarking and disembarking from a vessel (**Count I**), failure to provide a reasonably safe excursion (**Count II**), negligent selection, hiring, and retention of Dolphin (**Count III**), negligent failure to warn (**Count IV**), negligent training (**Count V**), negligent supervision, (**Count VI**), negligent operation (**Count VII**) [*Id.* ¶¶ 49–148]. RCCL has filed the Motion to seek judgment on Counts I, II, and V-VII pursuant to Fed. R. Civ. P. 12(c). [D.E. 98]. We address each of these arguments below.

## II.    *ANALYSIS*

Federal Rule of Civil Procedure 12(c) permits the parties to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial[.]" "A motion for judgment on the pleadings is governed by the same standard as a Rule 12(b)(6) motion to dismiss." *Reeves v. United States*, 526 F. Supp. 3d 1226, 1232 (S.D. Fla. 2021) (quoting *Guarino v. Wyeth LLC*, 823 F. Supp. 2d 1289, 1291 (M.D. Fla. 2011). The pleadings constituted the complaint, answers, any counterclaims, answers to such counterclaims, any judicially noticed facts, and any accompanying exhibits attached to the admissible pleadings. *Id.* (citations omitted).

3

"A court may consider documents attached to the complaint or incorporated by reference without converting the motion into a motion for summary judgment if the documents are: (1) central to the complaint, and (2) the documents' authenticity is not in dispute." *Id.* (internal quotation marks omitted) (quoting *Eisenberg v. City of Miami Beach*, 54 F. Supp. 3d 1312, 1319 (S.D. Fla. 2014)). The Court may additionally consider and take judicial notice of any applicable public records. *Id.* (citing *Eisenberg*, 54 F. Supp. 3d at 1319. Further, in the case of *Johnson v. City of Atlanta,* 107 F.4th 1292 (11th Cir. 2024)), the Eleventh Circuit clarified that courts "may properly consider a document not referred to or attached to a complaint under the incorporation-by-reference doctrine if the a document is 1) central to the plaintiff's claims; and 2) undisputed, meaning that its authenticity is not challenged." 107 F.4th at 1300. The Court may not consider other documents outside the pleadings, those not in the public record or submitted as exhibits, without converting the Motion to a motion for summary judgment. *Id.* (quoting *Bernath v. Seavey*, No. 2:15-cv-358-FtM-99CM, 2015 WL 13805064, at *1 (M.D. Fla. Sept. 29, 2015)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1066 (11th Cir. 2017) ("We must accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff . . . but the allegations must nevertheless state a claim for relief that is plausible—and not merely possible—on

its face[.]" (citations omitted)). Conclusory statements, assertions or labels will not survive a 12(b)(6) motion to dismiss. *Ashcroft*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (setting forth the plausibility standard). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citation omitted). Additionally:

> Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). In evaluating the sufficiency of a plaintiff's pleadings, we make reasonable inferences in Plaintiff's favor, "but we are not required to draw plaintiff's inference." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005). Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations. *Id.*; *see also Iqbal*, 556 U.S. at 681 (stating conclusory allegations are "not entitled to be assumed true").

*Sinaltrainal v. Coca-Cola*, 578 F.3d 1252, 1260 (11th Cir. 2009), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449, 453 n.2 (2012).

The Eleventh Circuit has endorsed "a 'two-pronged approach' in applying these principles: 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal,* 556 U.S. at 679).

### A. *Failure to Provide a Safe Means of Embarking and Disembarking from a Vessel (Count I)*

Plaintiff asserts Count I as a negligence claim, alleging that RCCL violated a non-delegable duty to provide a safe means of disembarking and boarding vessels. [D.E. 74 at 20]. RCCL seeks to dismiss Count I under the argument that plaintiff never boarded or disembarked from a RCCL tender boat or other vessel, and thus the injury exceeds the bounds of RCCL's duties to its passengers. [D.E. 98 at 5].

It is well-established that cruise shipowners owe their passengers a high duty of reasonable care. *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630 (1959) (citations omitted); *Kressly v. Oceania Cruises, Inc.*, 718 F. App'x 870, 872–73 (11th Cir. 2017); *Brocker v. Norwegian Cruise Line Ltd.*, No. 0623006CIV-HIGHSMITH, 2007 WL 2155648, *2 (S.D. Fla. July 26, 2007). The shipowner's duty includes providing a safe means for passengers to embark and disembark. *Vierling v. Celebrity Cruises, Inc.*, 339 F.3d 1309, 1319 (11th Cir. 2003) (citing *Tullis v. Fidelity and Casualty Co. of New York*, 397 F.2d. 22, 23–24 (5th Cir. 1968)). The obligation is nondelegable, and a carrier's failure to adhere to the duty renders it liable. *Id.*

RCCL argues that Plaintiff suffered her injury outside the scope of its duty because her injury occurred during a third-party excursion, not on a ship-to-shore transit "tender" boat. [D.E. 98 at 5]. If the *Islander II* was a feature of the excursion, the injury was not suffered on a tender and exceeds the scope of RCCL's duty. *Henderson v. Carnival Corp.*, 125 F. Supp. 2d 1375, 1377 (S.D. Fla. 2000). Therefore, the question before the Court is whether Plaintiff suffered her injury on a "tender."

RCCL argues that the Blue Lagoon Island Ferry could not have been a "tender" because it was transporting passengers from the dock at the Port of Nassau to Blue Lagoon Island, not from an offshore ship to shore. [D.E. 98 at 5]. Only if a person is picked up from or dropped off to a ship not in contact with a dock or land, can a boat be a tender. [*Id.*]. RCCL's argument requires that we give exceptional attention to whether a boat is "offshore"—if a boat comes into contact with a dock or other structure that is in contact with the shore, it is no longer offshore, and any ships entering to and from it cannot be classified as a "tender" boat. [*Id.* at 5 ("Although an excursion vessel may act as a tender, it doesn't achieve that status unless it is actively transporting passengers from an offshore vessel.")]; *see also* [*Id.* at 2 ("[T]he *Freedom* was docked at Port of Nassau, as opposed to being offshore.")]. RCCL attempts to synthesize three cases to support its definition.

First, RCCL cites *Chauve v. Costa Crociere, S.p.A.*, No. 06-61907-CIV, 2007 WL 9700781, at *1 (S.D. Fla. Oct. 15, 2007), to restrict the definition of "tender" to transportation between an offshore vessel and the shore. [D.E. 98 at 5]. But *Chauve* does not stand for such a restrictive definition. Rather, in referring to the pincite provided by *Chauve*, the only rule we can glean is that this District recognizes that those ships providing passengers transportation from an offshore ship to the main shore fall within the definition of tender, not that tender is as restricted as RCCL suggests. 2007 WL 9700781, at *1 (recognizing that the "tender" ferried passengers "from the main ship to shore" and later noting that "Costa hired [the tender boat company] to provide tender service from the ship to shore."). The fact that the court

7

noted in *Chauve* that Costa hired a company to "provide tender service from the ship to shore" suggests that it is at least plausible that tender services could extend beyond ship to shore transportation.

Second, RCCL then turns to *Henderson* to stand for the notion that boats that provide travel as "*part* of a separate excursion rather than standard ship-to-shore transit" are not tender boats. [D.E. 98 at 5 (emphasis added) (citing *Henderson v. Carnival Corp.*, 125 F. Supp. 2d 1375, 1377 (S.D. Fla. 2000))]. But RCCL again relies an incomplete review of the case it cites. *Henderson* was clear that the boat in question, a catamaran, *was* the excursion itself, not a means of transportation to an excursion. 125 F. Supp. 2d at 1377 ("[T]he Catamaran trip was an *excursion* for which [the plaintiff and his wife] purchased separate tickets." (emphasis in original)). As *Samuelov v. Carnival Cruise Lines, Inc.*, 870 So. 2d 853 (Fla. Dist. Ct. App. 2003), shows below, the ship's function in the excursion plays a primary role in our decision of whether it was or was not a tender.

Third, RCCL relies on *Samuelov*, a case in which the Florida District Court of Appeal found that the boat was a tender, distinguishable from *Henderson,* "because the cruise ship was anchored in the harbor alongside a tender used to take passengers on a shore excursion." [D.E. 98 at 5]. Yert again, however, RCCL's reading is again incomplete. RCCL is right to focus on *Samuelov* where the Florida District Court of Appeal found that a boat traveling from an anchored cruise ship to shore, for the purpose of transporting cruise ship passengers to an excursion, was a tender. The problem RCCL runs into is that it mistakenly distinguishes the two cases to stand

8

for location not purpose: "[*Samuelov* is] distinguish[ed] from *Henderson* because the cruise ship [in *Samuelov*] was anchored in the harbor alongside a tender used to take passengers on a shore excursion." [D.E. 98 at 5]. But *Samuelov* is quite clear that the distinguishing factor between the boat at issue in its fact pattern versus that in *Henderson* was that the boat in *Samuelov* was essentially used as a means of transportation to an excursion, not as an excursion in and of itself. 870 So. 2d at 856 ("We find that *Henderson* is factually distinguishable from the case before us in that the essence of the excursion in *Henderson* was the catamaran ride itself and not a land tour as is this case."). We know from our review of *Henderson* that the Florida court's assessment was entirely correct.

RCCL nevertheless argues that the *Islander II* is more akin to the analysis in *Henderson* because Plaintiff purchased a separate ticket to ride the boat, thus the boat ride was a feature of the excursion. [D.E. 98 at 6]. But RCCL's reading requires accepting its self-serving misunderstanding of *Henderson*, which is now refuted. A more appropriate reading sticks to what Judge Moore actually focused on in *Henderson*: "that the Catamaran trip was an *excursion*." *Henderson*, 125 F. Supp. 2d at 1377 (emphasis in original). Coupled with *Samuelov*, the more appropriate rule to take from *Henderson* is for courts to establish whether the supposed tender boat was the excursion or a means to attend the excursion. 870 So. 2d at 856. Put another way, did the plaintiff purchase a ticket to ride on the boat in question?

Plaintiff provides the proper answer. She notes that the *Islander II* only travels to and from Blue Lagoon Island; *Islander II* does not provide catamaran-like tours—

it only serves as a means of transportation. [D.E. 104 at 5]. Plaintiff's argument is clearly supported by the facts presented and the case law RCCL provided. There is thus no question, at least for purposes of the Motion, that the *Islander II* was not a catamaran-type excursion. The *Islander II* served as little more than a means of transportation for Plaintiff to get her feet on Blue Lagoon Island. We cannot conclude that Plaintiff failed to plausibly show that a reasonable juror could establish that the *Islander II* functioned as a tender, especially if the only alternative is that it must have been an excursion.[2]

### B.   *Failure to Provide a Reasonably Safe Excursion (Count II)*

Plaintiff's second count pleads negligence against RCCL for failure to provide a safe excursion. [D.E. 74 at ¶ 56–61]. RCCL argues that Plaintiff failed to allege an agreement to provide a safe excursion ever existed. [D.E. 98 at 7]. The duty to provide

---

[2]    If we reduce RCCL's argument further, its absurdity is revealed as it would hold that the same boat may be a tender for some passengers, but not others, even if they were all on the same cruise. Imagine a situation where a boat, the *Tinder*, drives from Dock A out to Cruise Ship 1 to pick up passengers to take to a tour of Lovers' Quarrel Beach. After stopping at Cruise Ship 1, the *Tinder* makes a quick stop at Dock B, where some Cruise Ship 1 passengers earlier that landed via transportation from a second boat, *Stinder*, for a quick tour of indigenous cave ruins. All the passengers on the *Tinder* make it safely to Lovers' Quarrel Beach and later return to Cruise Ship 1 via the *Tinder*. Under RCCL's argument, the *Tinder* is a tender boat for all passengers during the trip from Lover's Quarrel Beach to Cruise Ship 1. However, there is a crucial ambiguity for the trip to Lover's Quarrel Beach—the passengers who boarded the *Tinder* from Cruise Ship 1 rode to Lover's Quarrel Beach on a tender boat, but those passengers who boarded at Dock B, are not riding a tender, simply because they were not picked up from an offshore vessel. RCCL's argument hinges on an impractical formality that the case law RCCL itself attempts to synthesize does *not* stand for. If we take RCCL's own sources, we must look to a more functional and practical argument when deciding whether a boat is a tender: if a boat is primarily used to transport persons to an excursion, it's a tender.

a safe excursion is only activated upon some sort of assurance on the part of the shipowner that Plaintiff's third-party excursion would be safe. *Singh v. Royal Caribbean Cruises Ltd.*, 576 F. Supp. 3d 1166, 1191 (S.D. Fla. 2021); *see also Witover v. Celebrity Cruises, Inc.*, 161 F. Supp. 3d 1139, 1146 (S.D. Fla. 2016) (concluding that Royal Caribbean had modified the contract through express oral statements to assure a handicapped passenger accommodations). RCCL claims it never made any such agreement with Plaintiff. [D.E. 98 at 8].

As Plaintiff points out, this is RCCL's second attempt to dismiss Count II. As we noted in our first Report and Recommendation, "a plaintiff in Ms. Gilles-Jean's position may properly plead a non-delegable duty to offer reasonably safe excursions if the complaint offers facts that demonstrate 'some form of representation or assurance of safety [by the cruise line], above and beyond contract language.'" [D.E. 67 at 27] (quoting *Blow v. Carnival Corp.*, 674 F. Supp. 3d 1239, 1255 (S.D. Fla. 2023)). In *Bailey v. Carnival Corp.*, 369 F. Supp. 3d 1302, 1309 (S.D. Fla. 2019), this District refused to dismiss a failure to provide safe excursion claim for a third-party zipline tour injury imputed on Carnival because the plaintiff had pled that Carnival promoted the zipline tour, vouched for its safety, and advertised it as one of Carnival's tours on its website. *Blow* reasserted the rule provided in *Bailey*: "a duty [to provide a safe excursion] may be sufficiently alleged where a plaintiff can demonstrate that some form of representation or assurance of safety, above and beyond standard contract language, is made." *Blow*, 674 F. Supp. 3d at 1255 (S.D. Fla. 2023) (citing *Bailey*, 369 F. Supp. 3d at 1309).

Plaintiff argues that ¶¶ 28–30 of the SAC satisfy the burden. [D.E. 104 at 7]. We agree. As we have previously noted, Plaintiff's complaint, now the SAC, pleads that Plaintiff spoke with one of the RCCL staff members who answered questions and provided information about the Blue Lagoon excursion. [D.E. 74 at ¶ 28]. Additionally, RCCL made a point to promote and ensure the safety and speed of the Blue Lagoon excursion. [D.E. 74 at ¶ 29]. The SAC additionally pleads that RCCL made representations of control over the excursion and its operating partners, including Dolphin Encounters. [D.E. 74 at ¶ 30]. Plaintiff pleads that RCCL's representations were so strong that she did not understand that Dolphin was a third party and not simply an agent, subsidiary, or division of RCCL. [D.E. 74 at ¶ 32].

RCCL wants us to find the facts pleaded in Count II indistinguishable from *Singh v. Royal Caribbean Cruises Ltd.*, 576 F. Supp. 3d 1166 (S.D. Fla. 2021). [D.E. 98 at 7–8]. RCCL argues that *Singh* supports dismissal when a plaintiff fails to show an agreement with a "specific representation [or at least] a communication of special needs by a passenger[.]" [D.E. 98 at 8 (citing *Singh*, 576 F. Supp. 3d at 1191)]. At least in this instance, RCCL relies on a proper reading reading of *Singh*, but the SAC nonetheless prevails at this stage, as the SAC provides sufficient evidence at this stage of RCCL and Dolphin outward facing entanglement. Paragraph 31 asserts that RCCL directly benefited and promoted the excursion. Plaintiff alleges that RCCL controlled the price, managed the tickets, affixed its logo on the ad on the website, managed a table on the cruise ship, worked exclusively with the cruise ship passengers, dissuaded passengers from using other tour companies, collected

12

Plaintiff's payment for the tour, and provided Plaintiff with a receipt for the tour. [D.E. 74 at ¶ 31]. Paragraph 29  also claims that RCCL induced its passengers to purchase the excursion. ("By contrast, and as additional inducement for passengers, including the Plaintiff, to accept ROYAL CARIBBEAN's excursion contract offer, ROYAL CARIBBEAN vouches for the insurance and safety standards of its shore excursions and the prompt return of its excursions and passengers to the ship. That promise made up an essential condition of the contract between ROYAL CARIBBEAN and Plaintiff.").

For purposes of this Motion, Plaintiff has sufficiently pled enough facts to support a plausible finding that a contract existed between Dolphin Encounters and RCCL to the benefit of Plaintiff and that RCCL made the necessary representations of safety required by the case law in this District. The motion should thus be denied in this respect.

### C. *Negligent Training (Count V)*

Count V of the SAC seeks relief for RCCL's alleged "negligent training of its shipboard crew members and/or its agents and/or its partners and/or its joint venturer—Dolphin Encounters." [D.E. 74 at ¶ 94 (cleaned up)]. RCCL argues that it cannot be liable under a negligent training claim because Plaintiff does not show a "specific training program" in the SAC. [D.E. 98 at 10]. RCCL's "specific training program" requirement develops from an artful extrapolation of the holding in *Mayer v. Carnival Corp.*, 731 F. Supp. 3d 1316, 1322 (S.D. Fla. 2024). [D.E. 98 at 10]. Though RCCL's reading is creative, it is not appropriate. Rather, *Mayer* only requires that a

plaintiff must plead *a* training program. 731 F. Supp. 3d at 1322 ("Remember, to state a claim for negligent training, a plaintiff 'must allege [that the defendant] was negligent in the implementation or operation of [a] training program and [that] the negligence caused his injury.'" (quoting *Anders v. Carnival Corp.*, 2023 WL 4252426, at *4 (S.D. Fla. June 29, 2023) (Altonaga, C.J.)) (alterations in original and emphasis in original). In fact, it is perplexing that defendant cites *Mayer* to argue that Plaintiff needs to cite a "specific training program" when RCCL itself quotes the added "[a] training program" language from *Mayer* in the Motion. [D.E. 98 at 9]. To be sure, Plaintiff cannot rely solely on a company's "general policies or operations" to plead a negligence claim, *Quashen v. Carnival Corp.*, 576 F. Supp. 3d 1275, 1297, 1304 (S.D. Fla. 2021), as RCCL points out, [D.E. 98 at 9–10]. But this Plaintiff pleads clearly that RCCL "distributes crew member training materials; safety warning messages including those made through verbal announcement, newsletters and safety videos," [D.E. 74 at ¶ 100], but allegedly does not train them to warn. Whether Plaintiff's allegations will prove successful at trial is a question for the jury, but these claims are enough at pleading stage to survive under a motion to dismiss standard. *See, e.g., Spotts v. Carnival Corp.*, 711 F. Supp. 3d 1360, 1369 (S.D. Fla. 2024) (denying dismissal of negligent training claim as "our Plaintiff has made specific factual allegations about Carnival's 'trainings and procedures,' . . . and he does claim that Carnival failed to 'properly train[ ] its crew members to inspect, clean, dry, and warn passengers about the dangerous conditions on board the Carnival Pride, including [the] area where SPOTTS slipped and fell'").

### D. *Negligent Supervision (Count VI)*

Count VI of the SAC pleads for relief for RCCL's alleged negligent supervision "of its crew members and/or its agents and/or its partners and/or its joint venturer—Dolphin Encounters." [D.E. 74 at 43]. Like Count V, Count VI asserts vicarious liability against RCCL. [D.E. 74 at ¶¶ 115–16]. RCCL previously sought to dismiss Count V, VI, and VII, as alleged in the Amended Complaint, in its prior motion to dismiss on the grounds that Plaintiff could not cite an agency relationship between RCCL and Dolphin Encounters, [D.E. 20 at 10–11], which was denied in our Report and Recommendation [D.E. 67] (though not adopted and terminated as moot in accordance with [D.E. 72]). RCCL does not take on vicarious liability in the Motion, instead looking to dismiss the claim on the grounds that it cannot be held liable as a matter of law because Plaintiff did not identify a specific crewmember who was either unfit or who RCCL did not take corrective action against. [D.E. 98 at 11].

In support of its position RCCL relies on *Quashen v. Carnival Corp.*, 576 F. Supp. 3d 1275 (S.D. Fla. 2021), as well as Judge Altman's decision in *Spotts v. Carnival Corp.* that we cited above, 711 F. Supp. 3d at 1369. [D.E. 98 at 10–11]. "Negligent supervision occurs when, during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further actions such as investigating, discharge, or reassignment." *Quashen*, 576 F. Supp. 3d at 1304 (internal quotation marks omitted) (quoting *Doe v. Carnival Corp.*, 470 F. Supp. 3d 1317, 1324 (S.D. Fla. 2020)). "Accordingly, Plaintiff must allege that (1) the employer

15

received actual or constructive notice of an employee's unfitness, and (2) the employer did not investigate or take corrective action such as discharge or reassignment." *Id.* (internal quotation marks omitted) (quoting *Reed v. Royal Caribbean Cruises, Ltd.*, No. 19-24668-CIV, 2021 WL 2592914, at *9 (S.D. Fla. Apr. 23, 2021)); *see also Spotts*, 711 F. Supp. 3d at 1370 (applying the standard set forth in *Reed* and dismissing plaintiff's claim for failure to identify specific crewmembers).

Count VI, however, is a vicarious liability claim, not a direct liability claim. Plaintiff's Count VI seeks to hold RCCL vicariously liable for its failure, as a principal, for Dolphin's failures and any failures of RCCL crewmembers. True, the SAC does not do much to identify which RCCL crew members failed to supervise, but it did provide sufficient evidence that RCCL knew or should have known about the several dangers exacerbated by employees of Dolphin. Plaintiff cites several incidents between 2014 and 2020 of passengers suffering harms while embarking or disembarking Dolphin vessels. [D.E. 74 at ¶¶ 43-48]. The cited priors also resulted in lawsuits, some even involving RCCL. [D.E. 74 at ¶¶ 43(a)–(b)]. Plaintiff cites that RCCL engaged in prior inspections, that sufficient time had passed for them to take corrective action, that they had crew members who could clearly observe the dangers taking place, and that there are relevant industry standards focusing specifically on the cause of Plaintiff's injury. [D.E. 74 at ¶¶ 44–48; D.E. 74 at ¶¶ 121–31]. These allegations are sufficiently alleged to establish at this stage that it is plausible that RCCL was or should have been on notice of the dangerous conditions. *See, e.g., Witover v. Celebrity Cruises, Inc.*, 161 F. Supp. 3d at 1147 ("[The plaintiff alleges that

16

Celebrity Cruises] knew or should have known the [excursion operator's] practice of loading and unloading special needs passengers was unsafe. . . . Under *Twombly*/*Iqbal*'s liberal pleading standard, the [p]laintiff is not required to specifically detail which policies and procedures were unsafe and how they created danger. She need only allege that there was a danger that Celebrity should or could have known about. Because [p]laintiff has satisfied her pleading requirements, her claim for negligence survives Celebrity's 12(b)(6) motion.").

### E. *Negligent Operation (Count VII)*

Finally, RCCL seeks to dismiss Plaintiff's negligence claim against RCCL for negligent operation of *Islander II*. Plaintiff holds RCCL directly and vicariously liable for Dolphin's operational activities on the day of the incident. [D.E. 74 at ¶¶ 136-37]. RCCL argues that negligent operations claims are not recognized under federal maritime law, [D.E. 98 at 12]; *see also Malley v. Royal Caribbean Cruises Ltd.*, 713 F. App'x 905 (11th Cir. 2017) ("No court has ever held that [a negligent mode of operation claim] exists in federal admiralty law"), but RCCL confuses negligent operations claims with negligent mode of operations claims. A negligent mode of operation claim hinges on the "specific mode of operation selected by the premises owner or operator resulted in the creation of a dangerous or unsafe condition." *Torrents v. Carnival Corp.*, No. 19-24760-CIV, 2022 U.S. Dist. LEXIS 140791, 2022 WL 3154511, at *3 (S.D. Fla. Aug. 8, 2022) (quoting *Markowitz v. Helen Homes of Kendall Corp.*, 826 So. 2d 256, 260 (Fla. 2002)). The claim looks at the type (the mode) (e.g., the *Islander II*) of operation, not the "events surrounding the plaintiff's

17

accident." *Id.* (internal quotation marks omitted) (quoting *Markowitz*, 826 So. 2d at 260).

Plaintiff concludes that she is pleading a standard negligent operation claim, not a mode of operation claim, [D.E. 104 at 30], which this Court has previously allowed plaintiffs to assert. *Ruggeri v. NCL Bahamas Ltd.*, No.: 1:20-cv-21961-DPG, D.E. 115 (S.D. Fla. Oct. 25, 2023) ("While Plaintiff may present evidence regarding the operation of the tender vessel, Plaintiff may not proceed or recover on a negligent operation claim against Defendant."); *Diaz v. Carnival Corp.*, 555 F. Supp. 3d 1302, 1314 (S.D. Fla. 2021) (denying summary judgment of a claim for negligent operation of a scooter by a Carnival employee on a cruise ship); *Vega v. Celebrity Cruises, Inc.*, No. 19-21158-Civ-Scola, 2019 U.S. Dist. LEXIS 231269, at *3 (S.D. Fla. Mar. 28, 2019) (permitting the plaintiff to amend his complaint to establish a negligent operation cause of action); *Thanas v. Royal Caribbean Cruises Ltd.*, No. 19-21392-Civ, 2019 U.S. Dist. LEXIS 77334, at *2 (S.D. Fla. May 8, 2019) (requiring plaintiff to plead failure to investigate, negligent retention, and negligent operation causes of action be pled independently). In fact, RCCL's Answer admits that Count VII "asserts a cause of action sounding in negligent operation." [D.E. 75 at ¶ 136]. And RCCL points out in the Motion that ¶ 146 of the SAC pleads that "the *Islander II* [w]as not operated in a safe manner[.]" [D.E. 98 at 12 (alterations in original)]. A generous reading in the Plaintiff's favor would suggest simply that the SAC is pleading what it says: that Dolphin's operations, not mode of operations it chose, proximately caused the damages. For such purposes, Count VII should also pass muster at this stage.

### III.    CONCLUSION

For the foregoing reasons, the Government's motion for judgment on the pleadings should be **DENIED**.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE and SUBMITTED** in Chambers at Miami, Florida this 11th day of May, 2026.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge