**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 22-22780-Civ-GAYLES/TORRES

MARIE ROSENA GILLES-JEAN

     *Plaintiff.*

v.

ROYAL CARIBBEAN CRUISES, LTD.*,*

     *Defendant.*

_____/

**REPORT AND RECOMMENDATION**
**ON AMENDED MOTION FOR SUMMARY JUDGMENT**

This motion ("the Motion") asks this Court to enter summary judgment on two counts found in the Second Amended Complaint ("SAC"), Count III (negligent selection, hiring, and retention) and Count IV (negligent failure to warn), in favor of Defendant Royal Caribbean Cruises, Ltd. ("RCCL"). [D.E. 117]. The Plaintiff has responded to the Motion [D.E. 120], to which RCCL has replied [D.E. 122]. Having reviewed the record, the Court concludes that there are genuine disputes over material facts pertaining to both counts. Therefore, we recommend that RCCL's Motion be denied.[1]

---

[1]    On April 17, 2023, the Honorable Darrin P. Gayles referred this matter to the Undersigned Magistrate Judge for rulings on all pre-trial, non-dispositive matters and for issuance of a Report and Recommendation on any dispositive matters. [D.E. 51].

## I.   *BACKGROUND*

This action stems from injuries that Plaintiff, Ms. Gilles-Jean ("Plaintiff"), suffered while in The Bahamas while participating in a shore excursion during a Royal Caribbean cruise ship voyage. Dolphin Encounters ("Dolphin") is a Bahamian entity that offers shore excursions to cruise ship passengers in Blue Lagoon Island, a private island that Dolphin owns and operates in The Bahamas. [D.E. 74 ¶¶ 12–16, 20]. In connection with this business, Dolphin owns and operates ferry boats to transport participating RCCL passengers, like Plaintiff, to and from the cruise ship and Blue Lagoon Island. [*Id.* ¶ 24].

Plaintiff, a citizen of New York, claims that she suffered negligence-induced injuries while participating in Dolphin's excursion on October 30, 2021, while her cruise ship, *Freedom of the Seas*, was docked in Nassau. [*Id.* ¶¶ 35–42]. Because the island where the excursion takes place is located approximately thirty minutes by boat from where *Freedom of the Seas* docks in Nassau, cruise ship passengers are transported to the island by Dolphin's ferry boats. [*Id.* ¶¶ 43–44].

In October 2021, Plaintiff purchased a roundtrip cruise ticket to travel from Miami to the Bahamas on *Freedom of the Seas*. [D.E. 74 at ¶ 27]. While on the RCCL website, Plaintiff viewed advertisements for the various excursions that cruise ship passengers can purchase, including those provided by Dolphin. [*Id.*]. On October 29, 2021, before departing Miami, but while aboard *Freedom of the Seas*, Plaintiff visited RCCL's excursion desk, asked questions to the RCCL staff member, and purchased a

ticket for a Dolphin excursion to Blue Lagoon Island. [*Id.* at ¶ 28]. She purchased her ticket with her Royal Caribbean SeaPass Card [*Id.*].[2]

The SAC, the operative complaint, pleads facts claiming that RCCL encouraged cruise ship passengers not to purchase third-party excursions not in partnership with RCCL while also upselling the quality of RCCL-partner excursions. [*Id.* at ¶ 29]. RCCL did not disclose that the excursions were operated by a third-party entity, it contracted directly with Plaintiff for the excursion, and it provided Plaintiff with her receipt. [*Id.* at ¶ 31]. As far as Plaintiff understood when she purchased her excursion ticket, Dolphin and RCCL were one and the same. [*Id.* at ¶ 32].

Up until Plaintiff suffered her injuries, all appears to have gone well on October 30, 2021. Plaintiff and her sister-in-law rode a Dolphin ferry to Blue Lagoon island, completed a nature walk, climbed a tower, and saw dolphins. [D.E. 117-6 at 57–58, ln. 21–20]. At some point later in the day, Plaintiff, her sister-in-law, and the other passengers boarded the Dolphin ferries to return to the *Freedom of the Seas*. [*Id.* at 58, ln. 21–22]. Plaintiff boarded the *Islander II*. [D.E. 74 at ¶ 17; D.E. 117 at 2].

Plaintiff claims that she was injured while attempting to disembark the *Islander II* onto the dock that was attached to *Freedom of the Seas*. [D.E. 74 at ¶ 38].

---

[2] Passengers receive a Royal Caribbean Seapass Card upon boarding a RCCL cruise. The card functions as an onboard charge card, opens doors, and serves as identification upon embarkation and disembarkation at the different stops RCCL cruise ship make during a cruise.

According to the SAC, Dolphin crew members failed to properly dock *Islander II*, and they negligently disembarked excursion participants from it. [*Id.* at ¶ 39]. Specifically, Plaintiff pleads that, while she was in the process of disembarking *Islander II* and stepping onto the floating platform to return to the cruise ship, a sudden drop in elevation caused her left leg to become trapped in between the floating dock and *Islander II*'s hull, resulting in injuries to her ankle and tibia. [*Id.* at ¶ 40]. She received medical care at the scene and has since undergone several surgeries to treat seemingly permanent debilitations. [*Id.*].

Based on these facts, Plaintiff filed a seven-count amended complaint against RCCL. [*Id.* ¶¶ 49–148]. Only Count III and Count IV are at issue in this Motion.

Over the last several years, the parties have undertaken extensive discovery, which included several depositions. It is upon this evidence that RCCL argues that the depositions and additional evidence show that no genuine issues of fact remain and that no reasonable jury could find for the Plaintiff as to these counts. [D.E. 117].

For her part, however, Plaintiff presents testimony in opposition to the motion that bears on what RCCL and Dolphin knew before Plaintiff boarded. Karen Troenig ("Troenig"), an RCCL crewmember present at the dock that day, testified that she believed the disembarkation area was unsafe before the incident occurred. [D.E. 117-5 at 96, ln. 10-14]. She did not report her concern to Dolphin because she didn't find it her place. [D.E. 117-5 at 91–92, ln. 23–13]. Captain Watson ("Watson"), who operated the Islander II that afternoon, stated that the disembarkation location was "not 100 percent safe" and that Dolphin used it because Nassau Port directed them

to. [D.E. 117-2 at 68, ln. 13; 69, ln. 17]. And Shereese Albury ("Albury"), a Dolphin employee, testified that she did not believe the green blockades that *Islander II* nestled against during disembarkation were safe. On the day Plaintiff was injured, Troenig observed that the sea was rough and that she could see the boat "going up and down." [D.E. 117–7 at 47, ln. 14-17].

Based on this record we will address the arguments in kind below.

## II.     ANALYSIS

### A.  *Standard of Review*

"The Federal Rules of Civil Procedure apply [in whole to admiralty law] except to the extent that they are inconsistent with [the] Supplemental Rules[.]" Fed. R. Civ. P. Supp. R. A(2). Federal Rule of Civil Procedure 56(a) provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion." Fed. R. Civ. P. 56(a); *see also Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 (11th Cir. 1994) ("If no reasonable jury could return a verdict in favor of the nonmoving party, there is no genuine issue of material fact and summary judgment will be granted."). The movant bears the burden of proving that the nonmoving party failed "to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Ctys. in State of Ala.*, 941 F.2d 1428, 1438 (11th Cir. 1991) ("When the *moving* party has the burden of proof at trial,

that party must show *affirmatively* the absence of a genuine issue of material fact[.]" (emphasis in original)). "When determining if a genuine factual issue . . . exists . . . a trial judge must bear in mind the quantum and quality of proof necessary to support liability[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986); *see also Four Parcels*, 941 F.2d at 1438 (11th Cir. 1991) ("[T]he moving party may support its motion for summary judgment with affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial."). Rule 56(c) allows the movant to meet its burden by the production or clear refutation of evidence on the record and outside the four corners of the complaint by:

> (A) citing particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or by

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The Court may consider evidence outside the record in coming to its conclusion. Fed. R. Civ. P. 56(c)(3).

Once the moving party has met its burden, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). She must assert specific facts showing that a genuine issue fit for trial remains before the court. *Id.* at 587; *Celotex*, 477 U.S. at 325. Conclusory assertions are insufficient. *Celotex*,

477 U.S. at 327 (White, J., concurring); *Ellis v. England,* 432 F.3d 1321, 1326 (11th Cir. 2005); *Fullman v. Graddick,* 739 F.2d 553, 557 (11th Cir. 1984).

A factual dispute is genuine and material only if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* "That is, while the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Id.* "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. The evidence must be "clear and convincing." *Id.* at 254.

The court must exercise care not to thrust the jury's sole duties and powers unto itself. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Id.* at 255. At the summary judgment stage, the Court must view any evidence and draw all justifiable inferences in the nonmoving party's favor. *Id.*; *see also Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam) ("[A]t the summary judgment stage, reasonable inferences should be drawn in favor of the nonmoving party."). However, not all evidence and inferences are reasonable. *Haley v. Amazon.com Servs., LLC*, 25 Wash. App. 2d 207, 522 P.3d 80 (2022) ("Federal Rule of Civil Procedure 56 jurisprudence recognizes a narrow exception [to the presumption in favor of the nonmovant] that

applies only when the nonmovant's evidentiary proffer is so implausible that no reasonable person could conclude that its assertions of fact can be true.").

On the other hand when faced with evidence that contradicts the nonmovant's narrative such that no reasonable juror could believe it, the Court need not contort the outer boundaries of reason to find for her. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (Scalia, J.) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."); *Fed. Trade Comm'n v. Corpay, Inc.*, 164 F.4th 807, 837 (11th Cir. 2026) (finding that the record "blatantly contradicted" the nonmoving party's narrative); *Riley v. City of Montgomery, Ala.*, 104 F.3d 1247, 1251 (11th Cir. 1997) (finding the plaintiff's theory "incredible" and thus insufficient for a reasonable jury to support).

To illustrate, in *Harris*, a videotape clearly contradicted the plaintiff's narrative. 550 U.S. at 380–81. In *Corpay*, the company's own internal document contradicted its narrative that certain "Fuel Only" cards could not purchase anything other than fuel. 164 F.4th at 837.

At the same time, however, courts apply this rule narrowly given its obligation to grant all reasonable inferences in favor of the non-movant. "As a general principle, a plaintiff's testimony cannot be discounted on summary judgment unless it is blatantly contradicted by the record, blatantly inconsistent, or incredible as a matter of law, meaning that it relates to facts that could not have possibly been observed or events that are contrary to the laws of nature." *Feliciano v. City of Miami Beach,* 707

F.3d 1244, 1253 (11th Cir. 2013); *see, e.g., Sears v. Roberts,* 922 F.3d 1199, 1209 (11th Cir. 2019) (reversing summary judgment where cited contradictions relied primarily on conflicting sworn testimony as opposed to incontrovertible documentation).

### B. *Negligent Selection, Hiring & Retention*

"To prevail on a negligence claim, a plaintiff must show that '(1) the defendant had a duty to protect the plaintiff from a particular injury, (2) the defendant breached that duty, (3) the breach actually and proximately caused the plaintiff's injury, and (4) the plaintiff suffered actual harm.'" *Guevara v. NCL (Bahamas) Ltd.,* 920 F.3d 710, 720 (11th Cir. 2019) (quoting *Chaparro v. Carnival Corp.,* 693 F.3d 1333, 1336 (11th Cir. 2012)). "[A] shipowner owes the duty of exercising reasonable care towards those lawfully aboard the vessel who are not members of the crew." *Id.* (quoting *Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625, 630 (1959)). If the risk-creating condition is one that is "commonly encountered on land and not clearly linked to nautical adventure[,]" the duty to warn depends on a defendant holding actual or constructive notice of the dangerous condition. *Keefe v. Bahama Cruise Line, Inc.,* 867 F.2d 1318, 1322 (11th Cir. 1989).

"An employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor." Restatement (Second) of Torts § 411 (1965). "Though cruise ship owners, such as Royal Caribbean, cannot be held vicariously liable for the negligence of an independent contractor, it is well-established that they may be liable for negligently hiring or retaining a contractor." *Smolnikar v. Royal Caribbean Cruises Ltd.,* 787 F. Supp. 2d 1308, 1318 (S.D. Fla. 2011) (citing *In re Cent. Gulf Lines, Inc.,* 176 F. Supp.

2d 599, 622 (E.D. La. 2001)). Our court has thus recognized that, under Florida law, "a principal may be subject to liability 'for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor (a) to do work which will involve a risk of physical harm unless it is skillfully and carefully done, or (b) to perform any duty which the employer owes to third persons.'" *Id.* (quoting *Suarez v. Gonzalez*, 820 So. 2d 342, 345 (Fla. Dist. Ct. App. 2002)).

The Eleventh Circuit requires plaintiffs to prove three elements to successfully prevail on a negligent hiring or retention claim: "(1) the contractor was incompetent or unfit to perform the work; (2) the employer knew or reasonably should have known of the particular incompetence or unfitness; and (3) the incompetence or unfitness was a proximate cause of the plaintiff's injury." *Ceithaml v. Celebrity Cruises, Inc.*, 739 F. App'x 546, 552 (11th Cir. 2018) (quoting *Davies v. Com. Metals Co.*, 46 So. 3d 71, 74 (Fla. Dist. Ct. App. 2010)).

RCCL argues that summary judgment is appropriate as to Count III because there is no genuine dispute about Dolphin's fitness or that RCCL held the requisite knowledge sufficient to satisfy a negligent hiring or retention claim . [D.E. 117 at 5]. Because the question of Dolphin's fitness and RCCL's knowledge are necessarily intertwined, we consider the two elements together.

RCCL first argues that it engaged in an appropriate vetting program before it hired Dolphin. [D.E. 117 at 6]. Courts in the Eleventh Circuit have previously ruled in favor of defendant cruise lines that undertook proper due diligence before hiring third-party contractors. To illustrate, the Eleventh Circuit in *Wolf v. Celebrity*

*Cruises, Inc.* found it sufficient that Amanda Campos, then corporate representative for Celebrity Cruises Inc. ("Celebrity"), testified that Celebrity contracted with third party after it visited the third party company's facility (which contained ziplines and a ropes course) and reviewed the third party's safety, ratings and price factors. 683 F. App'x 786, 796 (11th Cir. 2017).

In a later case, *Ceithaml v. Celebrity Cruises, Inc.*, the Eleventh Circuit found that Celebrity sufficiently shielded itself from a negligent hiring claim because it relied on the third party's positive reputation and experience, reviewed a safety history report of it that did not assert prior harms, required it to maintain insurance, and mandated a harm reporting system. 739 F. App'x 546, 552 (11th Cir. 2018).

In this record, although RCCL did not perform site visits of Blue Lagoon Island or its ferries before contracting with Dolphin, as Celebrity probed in *Wolf*, it examined Dolphin enough to raise a fact question. Blue Lagoon Island is merely an island where patrons visit for rest and relaxation, go on nature walks, or see dolphins, [D.E. 117-6 at 46–47, ln. 23–13; 117-6 at 48, ln. 1–4], not an inherently dangerous facility like a zipline course. Furthermore, Amanda Campos, now corporate representative for RCCL, testified that, when Dolphin sought out business with RCCL in 1994 or 1995, it provided safety information and reports that RCCL reviewed. [D.E. 117-1 at 52].

Plaintiff has not seen the reports despite discovery requests, and believes RCCL is withholding them. [D.E. 120 at 3]. She argues that she is therefore entitled to an "adverse inference[.]" [*Id.*]. The problem is that Plaintiff cites no evidence of RCCL improperly withholding discovery materials. Moreover, this Court cannot find

evidence that a company has a duty to retain bid forms for thirty years, and thus cannot find a reason to find Plaintiff's assertion of RCCL's noncompliance with discovery more than a mere conclusory allegation. By all the available evidence, a reasonable juror could conclude that RCCL acted diligently when it selected Dolphin. But that is not where the inquiry stops.

Even if the initial selection was found to be free of any negligence, the next question is whether there is a genuine dispute of fact on whether RCCL negligently continued business with Dolphin (i.e., in the retention process). "To retain" encompasses, in addition to mere selection, actions such as "[t]o hold in possession or under control; to keep and not to lose, part with or dismiss." RETAIN, Black's Law Dictionary (12th ed. 2024). It is not only the selection, but the continued relationship spanning more than thirty years between RCCL and Dolphin that is at issue. *Healy v. NCL (Bahamas) Ltd.*, 733 F. Supp. 3d 1227, 1234 (S.D. Fla. 2024) ("[W]ith negligent retention, liability hinges on whether the defendant was aware or should have been aware of such unfitness 'during the course of the contractor's employment.'" (quoting *Smolnikar*, 787 F. Supp. 2d at 1318 n. 7)).

RCCL's primary argument in support of judgment on this question is that Dolphin has never been involved in an injury-causing incident while passengers embarked or disembarked its ferries at Port of Nassau. [D.E. 117 at 2; D.E. 117-1 at 270, ln. 11–21]. RCCL further argues that prior incidents of harm caused by or involving Dolphin, even if they did occur, cannot establish that it knew of Dolphin's incompetence. [D.E. 117 at 9].

A "Plaintiff may show constructive notice by submitting evidence (1) that the risk-creating condition 'existed for a sufficient period of time to invite corrective measures' or (2) 'of substantially similar incidents in which conditions substantially similar to the occurrence in question must have caused the prior incident.'" *Taylor v. Royal Caribbean Cruises Ltd.*, 437 F. Supp. 3d 1255, 1260 (S.D. Fla. 2020) (finding three prior incidents of shoulder injuries suffered on a cruise sufficient to establish constructive notice) (quoting *Sutton v. Royal Caribbean Cruises*, Ltd., 774 F. App'x 508, 511 (11th Cir. 2019)). "The 'substantial similarity' doctrine does not require identical circumstances, and allows for some play in the joints depending on the scenario presented and the desired use of the evidence." *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1287 (11th Cir. 2015).

Plaintiff argues that RCCL had knowledge of prior incidents involving Dolphin by first citing four lawsuits in this District: *Bustamante v. Celebrity Cruises Ltd. et al.,* Case No.: 1:22-cv-20330; *Hadfield v. Royal Caribbean Cruises Ltd. et al.*, Case No.: 1:21-cv-20950; *Francke v. Royal Caribbean Cruises Ltd. et al.*, Case No. 1:19-cv-20582; *McShane v. NCL (Bahamas) Ltd. et al.*, Case No.: 1:16-cv-20991-JLK. [D.E. 120 at 5]. Plaintiff also offers evidence in the form of Plaintiff's own deposition to support an inference that RCCL had knowledge of prior similar incidents involving cruise ship passengers and Dolphin Encounters. [D.E. 120 at ¶ 36]. Yet Plaintiff's deposition provides no evidence that RCCL actually knew of such prior incidents. [D.E. 117-6 at 71–72, ln. 7–18].

But actual knowledge is not necessary under *Taylor* if Plaintiff can show substantial similarity between and sufficient time before the prior incidents to invite corrective measures. True enough, not each case is on point or involved RCCL. But some were. *See Hadfield*, Case No.: 1:21-cv-20950, [ECF 1] (alleging Dolphin's incompetence caused elderly plaintiff to fall from a ladder while disembarking from a Dolphin ferry); *Francke*, Case No. 1:19-cv-20582, [ECF 1] (alleging Dolphin's negligence caused plaintiff to fall and suffer injuries while embarking a Dolphin ferry); *McShane*, Case No.: 1:16-cv-20991-JLK, [ECF 1] (alleging that Dolphin negligently ordered plaintiff to jump off Dolphin ferry at Blue Lagoon Island). As we stated in our previous Report and Recommendation, these prior incidents involved RCCL passengers who were injured while embarking or disembarking from the Blue Lagoon Island Ferry, sustained serious physical injuries, and brought forward functionally identical lawsuits as this one. [D.E. 67 at 26]. Though the negligent claims in those prior lawsuits did not result in a final verdict on the merits, the allegations of prior incidents could have been enough to put RCCL on notice that Dolphin's embarkation and disembarkation procedures deserved stricter scrutiny. A jury question thus exists on this issue that cannot be resolved on summary judgment.

Plaintiff additionally argues that defendant knew or should have known the chosen disembarkation location was not safe. [D.E. 120 at 4]. Plaintiff relies on the testimony of RCCL crewmember Troenig, [D.E. 117-5 at 96, ln. 10–14], Dolphin employee Watson (who operated the *Islander II* on the day of the incident), [D.E. 117-2 at 68, ln. 1–25], and Dolphin's employee Albury, [D.E. 117-7 at 47 ln. 3–17]. While

Troenig stated that she was not aware of any prior disembarkation incidents involving Dolphin Encounters at the location where Plaintiff sustained her injury, [D.E. 117-5 at 90, ln. 18-19], she additionally testified that the incident could have been prevented, [D.E. 117-5 at 91, ln. 13-22], and that she knew that the area where *Islander II* disembarked passengers was unsafe before the Plaintiff's injury. [D.E. 117-5 at 96, ln. 10-14]. Perhaps in fear of retaliation, she testified that she did not escalate the issue to Dolphin's attention because she didn't find it her place to tell Dolphin how to do their job. [D.E. 117-5 at 91–92, ln. 23–13]. Moreover, she testified that, on the day of the incident, the sea was "rough" and that she could see the boat going up and down. [D.E. 117-5 at 92, ln. 15–20]. Watson stated in his deposition that the disembarkation location was "not 100 percent safe." [D.E. 117-2 at 68, ln. 13]. He additionally testified that Dolphin used the location because they were directed to by the Nassau Port. [D.E. 117-2 at 69, ln. 17]. Albury testified that she did not believe the green blockades, blockades that the *Islander II* nestled against during disembarkation, were safe. [D.E. 117–7 at 47, ln. 14-17].

Though RCCL may have taken the proper procedures when it hired Dolphin, there is sufficient evidence at this stage to raise genuine questions as to whether Dolphin was an incompetent third party. Further, as the depositions and lawsuits show, there is ample evidence to raise a genuine question as to whether RCCL knew of Dolphin's allegedly incompetent actions in embarking and disembarking RCCL's passengers. See, e.g., *Blanton v. Carnival Corp.,* No. 24-CV-23898-RAR, 2026 WL 943748, at *3 (S.D. Fla. Apr. 8, 2026) ("given that Plaintiff has provided evidence in

the form of similar cases and prior incidents, . . . a 'reasonable trier of fact could return judgment for Plaintiff as non-movant' as to whether there is 'evidence of a dangerous condition[.]'") (citations omitted).

### C. *Negligent Failure to Warn*

We next evaluate Plaintiff's failure to warn claim. Plaintiff argues that RCCL knew of the dangerous conditions that proximately caused her injuries and failed to satisfy its duty of care by failing to warn her of the dangerous condition. [D.E. 74 at ¶ 75–92]. "Negligent failure to warn 'sounds in negligence but is a separate cause of action with distinct elements.' . . . To state a claim for negligent failure to warn, Plaintiff must allege: (1) that Defendant knew of the allegedly dangerous conditions; and (2) that the condition was not open and obvious." *Pride v. Carnival Corp.*, No. 23-CV-22121, 2023 WL 6907813, at *4 (S.D. Fla. Oct. 19, 2023) (first quoting *Anders v. Carnival Corp.*, No. 23-21367, 2023 WL 4252426, at *4 (S. D Fla. June 29, 2023); and then citing *Carroll v. Carnival Corp.*, 955 F.3d 1260, 1264 (11th Cir. 2020)). A ship owner generally owes to its passengers a duty to exercise reasonable care under the circumstances, . . . which includes "a duty to warn of *known dangers* beyond the point of debarkation in places where passengers are invited or reasonably expected to visit[.]" *Ceithaml,* 739 F. App'x at 533 (quoting, with emphasis in original, *Chaparro*, 693 F.3d at 1336, and also citing *Franza v. Royal Caribbean Cruises, Ltd.,* 772 F.3d 1225, 1233 (11th Cir. 2014)).

Evidence of prior knowledge, and subsequent action taken to provide customers with notice of similar dangerous situations at an injury's location, could

support a finding that a defendant held enough actual or constructive knowledge sufficient to give rise to a duty to warn. *Sorrels,* 796 F.3d at 1288-89 (finding it sufficient to create a genuine issue of material fact that cruise line company knew of the ship's dangerously precipitation-caused wet deck when it regularly placed "slippery when wet" signs on the deck to warn passengers).

As the depositions provided by RCCL and Dolphin employees show, there is clearly a live dispute as to whether RCCL and Dolphin knew of the dangerous condition. Both RCCL employees and Dolphin stated that the area wasn't safe and that Dolphin used it anyway. RCCL may disagree, of course, but a factfinder would have to decide whether the facts known to RCCL were sufficient on this score. *See, e.g., Amy v. Carnival Corp.,* 961 F.3d 1303, 1310 (11th Cir. 2020) ("Evidence that a ship owner has taken corrective action can establish notice of a dangerous condition.") (reversing summary judgment on failure to warn claim where "a reasonable jury could understand [employee's] testimony to show that Carnival knew of the dangers of climbable railings, as well as the 4-inch safety standard, and implemented that standard to prevent children from falling through the guard rails.").

We can then turn to the second prong of the test: whether the dangerous condition was "open and obvious." A cruise ship bears a duty to warn its passengers of dangerous conditions, unless they are open and obvious. *Taylor*, 437 F. Supp. 3d at 1260 (citing *Krug v. Celebrity Cruises*, 745 F. App'x 863, 866 (11th Cir. 2018)); *see also Malley v. Royal Caribbean Cruises Ltd.,* 713 F. App'x 905, 908 (11th Cir. 2017) ("A defendant cannot be liable for failure to warn if the risk-creating condition is open

and obvious to a reasonable person."). "Whether a danger is open and obvious is determined from an objective, not subjective, point of view." *Lugo v. Carnival Corporation*, 154 F. Supp. 3d 1341, 1346 (S.D. Fla. 2015) (citing *Flaherty v. Royal Caribbean Cruises, Ltd.*, No. 15-22295, 2015 WL 8227674, at *3 (S.D. Fla. Dec. 7, 2015)). That is because this question is evaluated under a reasonable person standard. *Carroll,* 955 F.3d at 1264 (quoting *Lamb by Shepard v. Sears, Roebuck & Co.*, 1 F.3d 1184, 1189–90 (11th Cir. 1993) (explaining in the products liability context that whether a danger is open and obvious is determined "on the basis of an objective view of the product, and the subjective perceptions of the . . . injured party are irrelevant") (reversing summary judgment that relied on open and obvious finding based on plaintiff's deposition testimony; "There is a genuine dispute of material fact as to whether the danger associated with the walkway was open and obvious.").

Only those dangerous conditions obviously perceived by the "ordinary use of one's own senses" are open and obvious. *Krug*, 745 F. App'x at 866 (citing *Lugo,* 154 F. Supp. 3d at 1345-46). A reasonable person must perceive the dangerous condition *and* the extent of the danger. *Yusko v. NCL*, 424 F. Supp. 3d 1231, 1236 (S.D. Fla. Jan 3, 2020). If the extent of the danger is unreasonable or not foreseeable then the condition may not be open and obvious. *Id.* (citing *Frasca v. NCL (Bahamas), Ltd.*, 654 F. App'x 949, 952 (11th Cir. 2016) (holding that a reasonable person would have recognized a wet deck was more slippery than usual but not that the deck was "unreasonably slippery")); *see, e.g., Gordon v. NCL (Bahamas) Ltd.*, No. 18-CV-22334-KMM, 2019 WL 1724140, at *3 (S.D. Fla. Apr. 15, 2019) (finding it impossible for an

*unreasonably* slippery surface to be open and obvious); *Lebron v. Royal Caribbean Cruises, Ltd.*, Case No. 16-24687-Civ, 2018 WL 5113943, at *10 (S.D. Fla. Aug. 14, 2018) ("[T]he question is not whether a condition itself was open and obvious, but whether the condition posed an unreasonable danger that would not be open and obvious to a reasonable person.") (denying summary judgment on failure to warn claim).

Applying these principles, our District has routinely declined to make reasonable person determinations on summary judgment. In *Taylor*, for instance, our court found that the danger involved with being touched by an indoor skydiving instructor or falling into an indoor skydiving tube might be obvious, but that there was a sufficient issue of material fact as to whether the force applied by the instructor into the tube was unreasonable or unforeseeable. 437 F. Supp. 3d at 1260. *In Yusko*, the plaintiff alleged she was injured while dancing with an employee of the cruise, a professional dancer, in a manner that caused her to fall. 424 F. Supp. 3d. at 1236. The court found that, while a reasonable person would perceive the obvious danger associated with falling while dancing, there was a genuine dispute over whether the injury was open and obvious in light of the specific manner in which the employee danced. *Id.*[3]

---

[3]     That is not to say, of course, that the open and obvious determination can never be decided on summary judgment. *See, e.g., Krug,* 745 F. App'x at 866 ("Defendant did not breach any duty to warn Plaintiff because there were *no hidden dangers* in playing the tiebreaker game.") (emphasis added); *Malley,* 713 F. App'x at 908-09 (presence of threshold step and extent of danger was open and obvious). But the Eleventh Circuit has warned that we should not over-rely on the open and obvious standard as a basis to grant judgment as a matter of law where unforeseeable or

These cases illustrate that, if a dangerous condition is obvious but the danger's severity is not entirely perceivable, the duty to warn persists at least enough to let the factfinder make the ultimate decision whether the defendant satisfied that duty. RCCL glosses over this distinction and confidently asserts that the dangerous condition was open and obvious by virtue of Plaintiff's testimony that she had actual knowledge of the dangerous condition. [D.E. 117 at 13]. "There was no gangway to make—to make, like, it was safe. They did have the gap in between with no gangway over it, and all those legal obstacles, the green bump. So I was watching, you know, where to put my foot." [D.E. 117-6 at 111, ln. 11–16]. Plaintiff also confirmed that other passengers were complaining about the dangerous disembarkation procedure before she was injured. [*Id.*]. She adds that her sister-in-law had complained that the disembarkation was dangerous prior to her disembarking. [*Id.*].

Plaintiff counters that 1) she was not aware that Dolphin would not deploy a ramp or gangway, 2) she was not aware of the height of the waves, 3) she did not know the ferry would suddenly drop, or 4) she did not realize there would be such a

---

unreasonable dangers from the condition may exist, as is the case here. *See, e.g., Carroll,* 955 F.3d at 1264-65 (summary judgment reversed because district court credited some of plaintiff's admissions but discredited testimony showing hidden dangers involved in walking around deck chairs; "the record supports an inference that a reasonable person in Mrs. Carroll's circumstances would not have observed the chair leg obstructing her path."); *Petersen v. NCL (Bahamas) Ltd.*, 748 F. App'x 246, 250 (11th Cir. 2018) (reversing summary judgment for cruise ship because "although the wetness of the deck was open and obvious, the unreasonably slippery state of the deck may not have been open and obvious to a reasonable person"); *Frasca,* 654 F. App'x at 953 (summary judgment reversed where "a reasonable jury could conclude that the degree of slipperiness on the deck was not open and obvious.").

large gap between the Blue Lagoon Island Ferry (*Islander II*) and the dock. [D.E. 120 at 18].

In fairness it is hard to square many of her positions with her deposition testimony. Plaintiff conceded that she knew that Dolphin did not deploy a ramp or gangway and that there was a large gap, which she could see when she was looking down and watching where to put her foot as she attempted to disembark. [D.E. 117-6 at 111, ln. 18–22]. She rode on the ferry from Blue Lagoon Island to the dock, so she already felt and saw the waves. She clearly knew that there was danger involved in getting off *Islander II*.

But though Plaintiff undoubtedly appreciated that danger, that is not enough by itself. When viewed in the light most favorable to the non-movant, we must also ask whether it is plausible that Plaintiff did not appreciate the degree to which the waves would jolt the *Islander II* up and down, and that such a jolt would exacerbate the dangerous condition so to make it unreasonably dangerous. Just as an unreasonably slippery surface can *never* be open and obvious, *Gordon*, 2019 WL 1724140, at *3, the objective, reasonable person, who is not a seasoned mariner, cannot be deemed as a matter of law fully aware of the degree to which the waves would create a dangerous disembark.

And that is particularly true here where, unlike a passenger who can see a wet deck and try to avoid it, this plaintiff had no choice but to try and get on the ferry that RCCL procured for this excursion. Under those circumstances, a reasonable juror could find that the duty to warn was not obviated. In other words, the rationale

for the open-and-obvious rule is self-protection: a passenger who can see a wet deck can choose to walk around it or hold the railing more firmly. But Plaintiff here had no equivalent choice. She could see that there was a gap and that the boat was moving. What she could not see, and what no ordinary passenger without seafaring experience could be expected to see, was the degree to which a rough-sea swell would cause the ferry to drop suddenly, converting a manageable step into a trap. An unreasonably dangerous condition is not open and obvious merely because the passenger knew some danger was present. To hold otherwise would effectively immunize carriers from warning duties every time a passenger set foot on a boat in rough waters. A jury should decide instead, based on the events of that day and the testimony at trial, if RCCL appreciated this particular dangerous condition, if Plaintiff was already aware of the danger and severity of the risks, and if RCCL satisfied any duty to warn in any event. *See, e.g., Blanton,* 2026 WL 943748, at \*4 ("[T]hough the sun-exposed floor deck may have been open and obvious, it is an issue of fact whether 'a reasonable jury could conclude that the degree of [heat] on the deck was not open and obvious.' . . . And though Defendant points to statements from Plaintiff's deposition testimony that indicate he may have felt some heat, . . . it is for a jury to evaluate Plaintiff's testimony and make the appropriate inferences and credibility determinations.") (citations omitted); *Martin-Viana v. Royal Caribbean Cruises Ltd.*, 733 F. Supp. 3d 1308, 1341 (S.D. Fla. 2024) (denying summary judgment on failure to warn claim because the extent of the danger posed in trying to fully recline in a stateroom deck chair was not open and obvious); *Simone v. NCL*

*(Bahamas) Ltd.*, 584 F. Supp. 3d 1206, 1214 (S.D. Fla. 2021) (denying summary judgment on failure to warn claim because "a reasonable jury could find that the danger of the stationary handrail created a risk that was not open or obvious to a reasonable person under the circumstances presented to Plaintiff."); *Lebron*, 2018 WL 5113943, at *12 ("[T]he open and obvious doctrine does not consider the subjective knowledge of the injured party but considers whether a reasonable rollerblader would appreciate the dangers of skating on ice with an improperly laced boot. On the facts of this case, and considering all inferences in favor of the Plaintiff as the Court must on summary judgment, the undersigned concludes that a genuine issue of fact remains regarding whether such a condition is open and obvious.").

There are thus genuine disputes of material fact on this claim that preclude summary judgment in RCCL's favor.

### III.   CONCLUSION

For the foregoing reasons, the Court finds that there are genuine disputes of fact that are essential to Count III and Count IV. The motion for summary judgment [D.E. 117] should thus be **DENIED**.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal

conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1; *see, e.g.,*
*Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner*
*of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE and SUBMITTED** in Chambers at Miami, Florida this 11th day of
May, 2026.


/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge